■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RENE RESEK, Appellant. [763 NYS2d 282] —Judgment, Supreme Court, New York County (Dorothy Cropper, J.), rendered June 10, 1998, convicting defendant, after a jury trial, of criminal possession of a controlled substance in the third degree, and sentencing him, as a second felony offender, to a term of 5 to 10 years, affirmed.

The court properly exercised its discretion in admitting evidence of defendant's arrest for possession of a stolen vehicle, since this testimony was necessary to complete the narrative of the case, to explain how defendant came to be arrested, searched and found to be in possession of narcotics, and to dispel speculation by the jury (*see People v Till*, 87 NY2d 835 [1995]). The entire sequence of events would have been incomprehensible to the jury had they not been informed that the car had been reported stolen. Since this evidence was offered to prove that the police believed the car to be stolen, and not that defendant was actually guilty of criminal possession of stolen property, the fact that the grand jury did not indict defendant for that crime is irrelevant (*compare People v Goodman*, 69 NY2d 32, 40 [1986]). The court's thorough limiting instruction prevented any prejudice, and defendant's challenges to the sufficiency and timing of that instruction are unpreserved and we decline to review them in the interest of justice. Were we to review these claims, we would reject them.

The court properly exercised its discretion in ruling that the People could ask a police officer called as an expert witness whether the quantity of drugs recovered from defendant was "consistent with selling" (*see People v Wright*, 283 AD2d 712, 714 [2001], *lv denied* 96 NY2d 926 [2001]; *People v Ramos*, 248 AD2d 334 [1998], *lv denied* 92 NY2d 859 [1998]). To the extent that the officer's response could be viewed as going beyond that question, it could not have caused any prejudice in view of the court's thorough instructions on the subject of expert testimony, as well as the strong evidence that defendant possessed the drugs with intent to sell.

The court properly exercised its discretion in imposing reasonable limits on cross-examination of the police chemist (*see*

*Delaware v Van Arsdall*, 475 US 673, 678-679 [1986]). The question precluded by the court sought to elicit essentially the same information that defendant had already elicited. Concur— Saxe, Sullivan and Lerner, JJ.

Mazzarelli, J.P., and Rosenberger, J., dissent in a memorandum by Rosenberger, J., as follows: On October 21, 1997, two anticrime police officers observed defendant enter and drive a stolen car that they had been monitoring. They followed defendant to a nearby gas station, where they arrested him for possession of a stolen vehicle. An inventory search of the vehicle resulted in the recovery of nine glassine envelopes of heroin, and defendant turned over an additional 14 envelopes during a search of his person at the precinct.

The prosecution sought to indict defendant for criminal possession of the stolen vehicle and criminal possession of a controlled substance with intent to sell. The grand jury refused to indict defendant on the criminal possession of stolen property charge, but did indict him on the charge of criminal possession of a controlled substance with intent to sell.

The primary, if not the sole, issue at trial was whether defendant intended to sell the heroin that he admittedly possessed. Prior to trial, the prosecution sought and obtained, over defendant's objection, the trial court's permission to present testimony by the arresting officers that defendant was arrested for possessing a stolen vehicle, even though the grand jury had rejected that charge. The prosecution also sought permission to present expert police testimony on the pricing and packaging of heroin and how many packages a user—as opposed to a dealer—would normally have in his possession. Over defendant's objection, the court ruled that a police officer who had not been involved in defendant's arrest could provide expert testimony as to pricing and packaging and whether the amount in issue "was consistent with selling," but the expert could not testify as to defendant's intent.

The prosecution, in its opening statement, told the jury that defendant was arrested after police officers observed him driving a stolen car. At trial, the officers testified that they had been monitoring a "confirmed stolen vehicle," parked on West 175th Street, which they observed defendant unlock, enter and drive away, and that they followed defendant to a nearby gas station, where they arrested him for possession of a stolen vehicle. Additional references to defendant's connection to the stolen car were included in the prosecution's summation. Defendant's objections that the evidence was related to a charge that the grand jury had specifically rejected and was

unduly prejudicial were denied by the trial court. However, the court did instruct the jury, following the prosecution's opening statement and once during the testimony of one of the two arresting officers, that they should draw no inferences that defendant had anything to do with the theft of the car and that the evidence regarding the stolen car was meant only to explain the police actions in arresting defendant.

During direct examination of the police officer who was testifying as an expert witness, the prosecution asked the witness what possession of 23 glassine envelopes of heroin "is * * * consistent with?" To which the officer replied, "[f]or my training and experience, that would mean that this person was probably a dealer."

The admission of the stolen-car evidence was error as was the admission of the police expert's testimony regarding the ultimate issue in the case. Therefore, I would reverse.

Evidence of a defendant's involvement in uncharged crimes is generally inadmissible in a criminal trial based upon the principle that a "defendant is entitled to have the jury determine his guilt or innocence solely upon evidence tending to prove the crime charged and uninfluenced by irrelevant and prejudicial facts and circumstances" (*People v Cook*, 42 NY2d 204, 208 [1977]). In addition, the limitations on the admissibility of uncharged crimes are meant to reduce the risk that the jury might convict in order to punish the defendant for uncharged crimes, even if not persuaded beyond a reasonable doubt that he is guilty of the crime charged (*People v Ely*, 68 NY2d 520, 529 [1986]). Such evidence should be even more assiduously restricted when it deals with allegations of a crime which have been presented to a grand jury which has considered it and refused to indict.

As with most rules, this one has exceptions. Evidence of uncharged crimes may be admitted to shed light on such issues as intent, motive, knowledge, common scheme or plan, or defendant's identity (*People v Molineux*, 168 NY 264, 293 [1901]). The *Molineux* list is illustrative, not exhaustive (*People v Jackson*, 39 NY2d 64, 68 [1976]). For example, evidence of uncharged crimes also may be admitted as background material when relevant and necessary to prove a contested issue in the case (*People v Alvino*, 71 NY2d 233, 241-242 [1987]; *People v Montanez*, 41 NY2d 53, 58 [1976]) or to complete the narrative of the events (*Till*, 87 NY2d at 837; *People v Marte*, 207 AD2d 314, 316 [1994], *lv denied* 84 NY2d 937 [1994]) if such evidence is "inextricably interwoven" with the crime charged (*People v Vails*, 43 NY2d 364, 368 [1977]).

Uncharged crime evidence is not to be admitted when its purpose or effect is to demonstrate a defendant's predisposition to commit the crime with which he is charged (*People v Allweiss*, 48 NY2d 40, 46 [1979]). Moreover, even if uncharged crime evidence is offered for a legitimate purpose, such evidence must be excluded if its potential for prejudice outweighs its probative value (*Till*, 87 NY2d at 836; *People v Hudy*, 73 NY2d 40, 55 [1988]).

In this case, the evidence related to the stolen vehicle was not necessary to establish any of the *Molineux* factors. Nor, contrary to the prosecution's argument, was it admissible to provide "background" information or to "complete the narrative," both because such "background" was unnecessary and because it had absolutely no relevance to any element of the crime for which defendant was being tried. Evidence related to the stolen vehicle was not only utterly unconnected to the drug possession charge, it dealt with a charge that the grand jury had specifically rejected. In addition, in the absence of any suggestion that defendant intended to challenge the lawfulness of the police conduct in effectuating his arrest, there was no "background" or other information related to his arrest required (*see People v Foster*, 295 AD2d 110, 113 [2002], *lv denied* 98 NY2d 710 [2002]). (Of course, had defendant called into question the legality of his arrest, he would have opened the door to the testimony pertaining to his arrest for possession of a stolen vehicle. But, as in *Foster*, no such challenge was made.)

The trial court's cautionary instructions did not, and indeed could not, make the evidence related to the stolen car admissible. Rather than providing instructions to try to cure the prejudice likely to flow from the introduction of that evidence, the court could and should have avoided the prejudice entirely by excluding all stolen-car evidence and, if necessary, instructing the jury that the validity and lawfulness of defendant's arrest was not an issue in the case and that they should not speculate with regard to such matters. Admitting the uncharged crime evidence created the necessity for a curative instruction which, in my view, was too little, too late to salve the prejudicial effect of the stolen-car evidence. Accordingly, I would reverse on this ground alone.

The judgment should also be reversed because the testimony of the prosecution's expert witness invaded the province of the jury on the single, crucial issue of defendant's guilt or innocence of the crime charged. The police officer's testimony regarding the packaging and pricing of heroin involved in

unlawful drug transactions was plainly admissible as matters not readily known or understood by a layperson (*see e.g. People v Lacend*, 216 AD2d 112, 113 [1995], *lv denied* 87 NY2d 923 [1996]; *People v Hinton*, 178 AD2d 279 [1991], *lv denied* 79 NY2d 948 [1992]). Similarly admissible as evidence of defendant's intent was the testimony establishing that 23 glassine envelopes of heroin were recovered from defendant's person and the car he was driving when arrested (*see People v Ramos*, 248 AD2d 334, 335 [1998], *lv denied* 92 NY2d 859 [1998] [testimony regarding the large quantity of drugs recovered from defendant was properly admitted as relevant to the issue of intent]; *see also People v Turner*, 228 AD2d 331 [1996], *lv denied* 88 NY2d 996 [1996]). However, the testimony that an individual who possessed 23 envelopes of heroin "would mean that this person was probably a dealer" clearly exceeded the allowable and impermissibly intruded upon the jury's ultimate fact-finding responsibility (*see e.g. People v Wright*, 283 AD2d 712, 713 [2001], *lv denied* 96 NY2d 926 [2001]; *People v Pratt*, 266 AD2d 318 [1999], *lv denied* 94 NY2d 883 [2000]; *People v Lamont*, 227 AD2d 873 [1996]; *People v Williams*, 224 AD2d 725 [1996], *lv denied* 88 NY2d 855 [1996]; *People v Goodwine*, 177 AD2d 708 [1991], *lv denied* 79 NY2d 920 [1992]).

Because the testimony removed *the* crucial factual determination upon which defendant's guilt or innocence depended from the jury, the error in permitting such testimony cannot be viewed as harmless.

Accordingly, I would reverse.