OPINION OF THE COURT
Deborah Kaplan, J.
The defendant, M.T., stands charged with one count of endangering the welfare of a child in violation of Penal Law § 260.10 (1). The information alleges that on various dates between January and April 2000, at his residence in New York County, the defendant, a music teacher, placed his lips on the then 14-year-old complainant’s lips and kissed her approximately three or four times during the course of her piano lessons. The information further alleges that during a four-month period commencing March 2001, the defendant sent five sexually suggestive electronic mail messages to the complainant: a message sent on May 18, 2001 states in substance, “Hi, sexy thing”; a message sent June 2, 2001 states in substance, “I’m dreaming of you . . . from the pig (perv) in the picture”; a mes *982 sage dated March 9, 2001 states in substance, “Hi, you dangerous thing . . . miss you too (signed) perv.” The information alleges that this e-mail included an electronic link to a Web page that contains an optical illusion which, when the reader relaxes his or her eyes, reads, “No sex causes bad eyes.” On March 21, 2001, the defendant sent a message which states, “Lolita, sorry I missed your call . . . (signed) perv.” A fifth message dated March 24, 2001 states, “Hi cute thing, just wanted you to know I am thinking of you . . . (signed) perv.”
The People seek to introduce at trial evidence of prior uncharged crimes by testimony from one or two of the defendant’s other students with whom he allegedly had a sexual relationship. (See People v Ventimiglia, 52 NY2d 350 [1981]; People v Molineux, 168 NY 264 [1901].) According to the People, this evidence would show that the defendant “propositioned” these piano students during music lessons at his home, that he engaged in similar physical contact with them and that this conduct progressed into sexual intercourse. The defendant opposes the motion, arguing that this evidence does not fall within any of the exceptions to the rule precluding evidence of uncharged crimes. Upon consideration of the relevant law and the facts of this case, and for the reasons set forth below, the People are precluded from introducing this evidence as part of their direct case.[1]
It is long-settled law that evidence of uncharged crimes is inadmissible if such evidence is offered solely to show a criminal disposition or propensity and, therefore, that the defendant is likely to have committed the crime charged. (See People v Ventimiglia, supra; People v Molineux, supra; Prince, Richardson on Evidence § 4-501 [Farrell 11th ed].) However, evidence of uncharged crimes may be admissible to help establish some element of the crime under consideration, or to shed light on such issues as motive, intent, the absence of mistake or accident, a common scheme or plan, or the identity of the perpetrator. (See People v Molineux, supra.) Evidence of uncharged crimes also may be admitted as background material where relevant and necessary to prove a contested issue in the case. (See People v *983 Montanez, 41 NY2d 53 [1976]; People v Yapor, 308 AD2d 361 [1st Dept 2003].) Even when uncharged crimes evidence is admissible under one of these exceptions, it may not be received into evidence if its probative value is outweighed by the potential for prejudice. (See People v Cook, 93 NY2d 840 [1999]; People v Alvino, 71 NY2d 233 [1987]; People v Ventimiglia, supra.)
In the instant case, the People seek to introduce the uncharged crimes evidence as relevant to intent, absence of mistake or accident, common scheme or plan and background information. The court will address the People’s contentions ad seriatum.
Intent
The People first contend that the proffered evidence is admissible as evidence of the defendant’s intent to commit the crime of endangering the welfare of a child. Penal Law § 260.10 (1) requires the People to prove that the defendant, M.T., “knowingly act[ed] in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old.” (Emphasis added.) “A person acts knowingly with respect to conduct or to a circumstance described by statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists.” (Penal Law § 15.05 [2] [emphasis added].)
Where the nature of the act alleged is equivocal and a particular intent cannot be inferred, extrinsic proof is admissible to negate the existence of an innocent state of mind. It is recognized that in such cases proof of intent may be “unobtainable except by evidence of successive repetitions of the act.” (People v Schwartzman, 24 NY2d 241, 248 [1969].) In those cases, evidence of other similar acts is permitted under the intent exception to the rule barring admission of uncharged crimes. However, equally well established is the principle that evidence of prior criminal acts to prove intent is unnecessary and inadmissible where intent may be easily inferred from the commission of the act itself. (See People v Vargas, 88 NY2d 856 [1996]; People v Alvino, supra; People v Crandall, 67 NY2d 111 [1986]; People v Bagarozy, 132 AD2d 225 [1st Dept 1987].) As explained by the Court of Appeals in People v Alvino (supra at 242), “[s]imple proof showing that A. shot B. at one time and place throws no fight upon the charge that A. poisoned C. at another time and place” since, “[i]n either of these cases guilty knowledge or intent is inferable from the nature and surround *984 ings of each act, and each must be judged on its own circumstances.” In Bagarozy (supra at 236), the Court further explained that in the prosecution of sex offenses, “extrinsic evidence of intent is admissible only in those cases where there is no challenge to the occurrence of the physical contact itself, but the intent of the actor is at issue because the nature of the contact is subject to varying interpretations.”
Contrary to the People’s contention, the defendant’s alleged conduct or acts were not equivocal or open to innocent interpretation. The information alleges not only that the defendant kissed the child complainant on the lips approximately three or four times during the course of her piano lessons, but also that he sent her five unambiguous e-mails in which he refers to her as “Lolita,” “sexy thing” and “dangerous thing,” refers to himself as “perv” and “pig,” and links the complainant to a Web site which states, “No sex causes bad eyes.” Moreover, the People’s motion papers state that while the defendant kissed the complainant, he was “holding her head and/or body.” The People further state that “the defendant then physically attempted to engage in more explicit conduct, but was rebuffed by the fourteen-year-old girl” and that the defendant requested that the “relationship the two had through the complainant’s music lessons be broadened into a sexual relationship.” The defendant sent the complainant “numerous and explicit e-mails and phone calls to this end.”
The People make much of the fact that the five e-mails described in the information were alleged to have been sent one year after the alleged kissing incidents. However, all the allegations of the information must be considered together, as done by the People in their motion papers. Indeed, in their motion papers, the People rely upon the defendant’s alleged “attempt to engage in more explicit conduct,” his request for a sexual relationship and his e-mails and phone calls, to elucidate the nature of the kissing incidents. Nor is it dispositive that the defendant, in a prior motion to dismiss the complaint, argued that his kisses may have been merely “congratulatory” in nature. The defendant points out that his prior argument was directed to the facial sufficiency of the complaint and was not a proposed trial defense. In opposing the instant motion, he maintains that there is nothing innocuous or equivocal about the conduct now alleged such that, should a jury believe the complainant’s testimony that he kissed her while holding her body, attempted to engage in more explicit conduct, requested a sexual relation *985 ship and sent the alleged electronic messages, then the defendant’s intent will be clear, without the necessity of extrinsic or collateral evidence. That is, since defendant’s intent may be easily inferred from the commission of the alleged acts themselves, the evidence of uncharged crimes is unnecessary. (See People v Vargas, supra; People v Alvino, supra; People v Gautier, 148 AD2d 280 [1st Dept 1989].)
As stated above, the evidence the People seek to use on then-direct case includes testimony that the defendant had a sexual relationship with one or two other piano students. The potential prejudice posed by the introduction of these prior uncharged crimes is clear. It presents a very real risk that a jury would convict the defendant based on the more serious uncharged crimes or some inference of a propensity rather than the evidence relating to this case. (See People v Alvino, supra; People v Molineux, supra.) The court notes that the People have failed to supply the dates of the uncharged crimes. They state only that prosecution of those cases is “foreclosed” by the applicable statutes of limitations and “by other concerns.” Consequently, the uncharged crimes may be too remote to be relevant. (See People v Rochez, 289 AD2d 63 [1st Dept 2001]; People v Roth, 157 AD2d 494 [1st Dept 1990].) Since the evidence is not probative of the defendant’s intent to commit the crime charged, and the potential for prejudice is beyond dispute, the evidence must be excluded. (See People v Cook, supra; People v Hudy, 73 NY2d 40 [1988]; People v Alvino, supra; People v Ventimiglia, supra; People v Molineux, supra.)
Guidance is provided by People v Vargas (supra), where the defendant, charged with rape, sodomy and sexual abuse, claimed that the complainant had consented. The Court of Appeals found error in the trial court’s admission of evidence of the defendant’s “prior sexual misconduct” with other complainants, explaining that “[i]f the trier of fact believed defendant’s version of events, complainant consented to a sexual encounter with him ... If the trier of fact found the complainant more credible, defendant used force and threats to rape her, with intent readily inferable from the acts alleged.” (People v Vargas, supra at 858.) Applying the same reasoning, the First Department, in People v Gautier (supra), ruled that it was error to admit, as evidence of intent, testimony that defendant sexually abused the complainants for years preceding the crimes charged. Since the crimes charged alleged conduct not capable of innocent interpretation, the extrinsic evidence was unnecessary to prove intent.
*986 The cases relied upon by the People in support of their position are inapposite since, in those cases, the acts alleged in regard to the case being prosecuted were equivocal and open to innocent interpretation. Indeed, in People v Bagarozy (supra at 236), the First Department distinguished People v Young (99 AD2d 373 [4th Dept 1984]) as a case where “the intent of the actor is at issue because the nature of the contact is subject to varying interpretations.” In Young (at 374), the defendant, father of the 10-year-old complainant, was observed “running his hands across his daughter’s breasts and between her legs.” The Court permitted the People to introduce evidence of the defendant’s prior uncharged sexual contact with his daughter as proof of the element of intent, observing that “a certain amount of innocent touching occurs between a parent and child.” Similarly, in People v Yagunoff (266 AD2d 723 [3d Dept 1999]), the Court permitted the People to introduce photographs found at the defendant’s home which depicted the two complainants and various other children in provocative poses and varying stages of nudity. The acts alleged in the case before that Court consisted of the testimony of the two complainants that the defendant touched their “private part” and “bottom” while swimming. The Court reasoned that the photographs tended to prove that the defendant’s intent in touching the complainants was sexual and not accidental. In the instant case, the defendant is not the complainant’s parent, thus obviating the possibility of innocent touching. Furthermore, the physical conduct alleged was clearly not accidental, having occurred over a significant period of time and having been followed by a series of sexually suggestive e-mails.
Absence of Mistake or Accident
[2] The People contend that the uncharged crimes are admissible to negate any defense of accident or mistake. However, as conceded by the defendant, the nature and number of the acts alleged in this case would preclude any defense of accident or mistake. As stated previously, should a jury believe the complainant’s testimony that the defendant repeatedly kissed her while holding her body, attempted to engage in more explicit conduct, requested a sexual relationship and sent the alleged electronic messages, then the defendant’s intent will be clear.
Common Scheme or Plan
“The prosecution may introduce evidence that the accused had formed a common scheme or plan to commit a séries of *987 crimes including the crime charged.” (Prince, Richardson on Evidence § 4-512, at 187 [Farrell 11th ed].) However, “mere similarity between the acts is an insufficient predicate for admissibility under the common scheme or plan exception. Rather, [some] connection between the [acts] must be shown to have existed in fact and in the mind of the actor, uniting them for the accomplishment of a common purpose, before such evidence can be received. (People v Molineux, Dsupra] at p. 306.) Indeed, there must be such a clear concurrence of common features — i.e., time, place and character — that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations ... In the absence of such a clear connection between the collateral acts and the act in issue, the evidence should be excluded . . . Matter of Brandon, 55 NY2d 206, 212.” (Prince, Richardson on Evidence § 4-512, at 187-188 [Farrell 11th ed] [internal quotation marks omitted].)
In People v Williams (306 AD2d 691 [3d Dept 2003]), the defendant, accused of stealing a personal check from the complainant’s apartment and depositing the funds into his own account, claimed that the check was given to him by the complainant in exchange for some remodeling work he performed. The Court admitted into evidence testimony from the complainant regarding missing jewelry, reasoning that it was “relevant to defendant’s scheme or plan to take property from [the complainant] while staying at her apartment” (at 692). Similarly, in People v Pileggi (141 AD2d 866 [2d Dept 1988]), the defendant was arrested after being seen in the company of a woman shopping with a stolen credit card. The Court admitted, as proof of a common scheme or plan, testimony regarding the defendant’s prior uncharged criminal conduct earlier on the day of the incident and the previous day, wherein he accompanied the same woman who used the same stolen credit card in the same store.
Unlike in Williams and Pileggi, the uncharged crimes in this case lack the requisite “clear concurrence of common features” or “clear connection” with the acts which the defendant is now charged. Since the People have not indicated the dates of the uncharged crimes, it cannot be said that there is any temporal connection with the instant acts. In any event, the acts committed against each of the students are quite separate and distinct. The prior uncharged crimes, while perhaps similar in some respects to the acts alleged in this information, lack a sufficient connection to be considered a component of any common purpose, scheme or general plan of the defendant. Since *988 one would not be probative of the other, and the potential for prejudice is manifest, the uncharged crimes evidence is not admissible under the “common scheme or plan” exception.
Background Information
Uncharged crimes may be admitted into evidence, in the trial court’s discretion, where they serve as explanatory background information or to complete a narrative. (See People v Montanez, supra; People v Yapor, supra; People v Resek, 307 AD2d 804 [1st Dept 2003]; People v Monzon, 289 AD2d 595 [2d Dept 2001].) However, no legal authority supports the People’s argument that the defendant’s uncharged crimes are admissible as background material in this case.
In People v Montanez (supra), the defendant was accused of shooting a friend following a lengthy discussion in the victim’s home. The Court of Appeals ruled that it was permissible for the trial court to allow two witnesses to testify that they heard the defendant and the victim arguing about the sale of drugs, rather than give only generalized accounts of the argument without any particulars, since this testimony provided necessary background material. The defendant in People v Resek (supra) was arrested when police stopped the car he was in and discovered a quantity of drugs. Although he was tried only on the drug possession charge, the Court permitted the People to introduce evidence of the defendant’s arrest for possession of a stolen vehicle since the entire sequence of events would have been incomprehensible to the jury if they were not informed that the car had been reported stolen. Similarly, in People v Yapor (supra), a homicide prosecution, the First Department found that the trial court appropriately exercised its discretion when it admitted into evidence testimony regarding the arrest of the defendant’s wife. Since the defendant had surrendered to the police when he mistakenly believed she had been arrested for the instant crime, the Court concluded that such testimony provided “explanatory background information to complete the narrative” (at 362). The Court also permitted the introduction of prior threats made by the defendant to the deceased to explain the relationship between them.
Research reveals no case where, in a prosecution for sexual offenses against one child, the People were permitted to introduce, as background material, evidence that the defendant committed similar and more serious sexual offenses against another child at an undisclosed time. Testimony of the prior *989 uncharged crimes is simply unnecessary to explain or provide a background for the conduct charged in this case, and cannot be considered part of any narrative a jury would need to understand the facts relevant to this case. Unlike the cases relied upon by the People, preclusion of the uncharged crimes evidence here would not cause any confusion on the part of the jury. Rather, admitting the evidence would pose the real danger that the jury would mistakenly convict the defendant based on these prior acts or some propensity to commit such acts rather than on the evidence presented in this case.
Since the proposed uncharged crimes evidence is not admissible under any of the exceptions advanced by the People, its admission would serve only to bolster the complainant’s testimony. There is no recognized exception that permits admission of such testimony for that purpose. (See People v Vargas, supra; People v Lewis, 69 NY2d 321 [1987]; People v Ventimiglia, supra; People v Harris, 150 AD2d 723 [2d Dept 1989].)
Conclusion
For the reasons set forth above, the People’s motion to introduce on their direct case evidence of prior uncharged crimes is denied in its entirety.

. While it is inadmissible on the People’s direct case, the defendant may open the door to the uncharged crimes evidence by raising credibility issues during cross-examination of the complainant (see People v Houston, 250 AD2d 535 [1st Dept 1998]; People v McIver, 245 AD2d 180 [1st Dept 1997]), by raising other matters that may be explained or refuted by that evidence (see People v Kanani, 272 AD2d 186 [1st Dept 2000]), or during his own case should he choose to testify or present evidence in his own behalf.