**STATE of Iowa, Appellee,**

v.

**Kristen Joy JAMES, Appellant.**

No. 03–2031.

Supreme Court of Iowa.

March 11, 2005.

Linda Del Gallo, State Appellate Defender, and Patricia A. Reynolds, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Kevin Cmelik, Assistant Attorney General, R. Steven Johnson, County Attorney, and Michael J. Jacobson, Assistant County Attorney, for appellee.

LARSON, Justice.

Kristen James was convicted of child endangerment in violation of Iowa Code section 726.6 (2003). We conclude the district court misinterpreted the "knowingly" element of the child endangerment statute, and we therefore reverse the judgment of the district court and remand for a new trial.

## I. *Facts and Prior Proceedings.*

Jason and Kristen James lived in a second-floor apartment in Newton, Iowa, with their son, A.J., who was two years and nine months old. The following facts appear to be undisputed. On the day of this incident, Jason left for work at about 5:30 a.m. Both Kristen and A.J. were asleep, but Kristen soon awoke with a migraine headache. She got up and took a medication, and in the process, awakened A.J. Kristen intended to go back to sleep, but she was concerned that A.J., who had a penchant for opening doors, would leave his room and possibly go outside. Kristen tied his door almost shut with a telephone cord, leaving a gap of about two inches so he could call for her. Kristen went back to bed and, apparently because of the migraine medication, fell sound asleep.

Around noon Dawn Hoover, a neighbor, saw A.J. leaning out of his second-story window and attempted to persuade him to move away from it. She called Dianna Dougan, the apartment manager, for help. Dianna ran out of her office and yelled at her husband, Murry, the complex maintenance man, asking him to meet her at the James apartment. When Dianna arrived, she saw A.J. and joined Ms. Hoover in encouraging him to move away from the window. When Murry arrived, he went up the stairs to the James apartment. He rapped loudly on the door, but got no answer. He then used his maintenance key to open the door. Once inside, he saw the telephone cord tied to A.J.'s bedroom doorknob. He saw Kristen walk out of the

apartment's other bedroom, looking like she just awoke from a deep sleep.

Murry told Kristen that A.J. was hanging out the window, so she should untie the cord. She attempted to untie it, but she was unsuccessful, apparently because she was too groggy. Murry rushed over, yanked the cord off the knob, and went into the bedroom to pull A.J. away from the window. Dianna called social services.

The following day, a child-protection worker and a deputy met with Kristen and her husband to conduct an interview. During the interview, they insisted that the window was shut and locked and remained that way when Kristen went back to bed early in the morning. They admitted they had seen A.J. push the screen out before, but they had never known him to open the window by himself. They assumed that he could not unlatch the lock on his window, an assumption that other witnesses confirmed. Still, the child-protection worker concluded that Kristen had subjected A.J. to a substantial risk of harm.

Kristen was charged with child endangerment under Iowa Code section 726.6(1)(*a*), which provides:

> A person who is the parent, guardian, or person having custody or control over a child ... commits child endangerment when the person ... [k]nowingly acts in a manner that creates a substantial risk to a child or minor's physical, mental or emotional health or safety.

A violation of the statute that does not result in serious injury to the child is an aggravated misdemeanor. Iowa Code § 726.6(6).

At the trial, the court heard considerable debate over the proper interpretation of the statute, particularly the phrase "knowingly acts." Relying on *State v. Dunham*, 662 N.W.2d 371 (Table), 2003 WL 183774 (Iowa Ct.App. Jan. 29, 2003) (unpublished decision), the State argued that the phrase only required the defendant to have a conscious awareness of her actions. " 'Knowingly' modified the act[,] not the outcome," according to the State, and the court agreed, ruling that "knowingly" in the statute means "a conscious awareness of her own actions." The defendant requested the instruction that was expressly rejected in *Dunham*, which would have informed the jury that

> [f]or the defendant to know something means she had a conscious awareness that she was creating a substantial risk to ... "the child['s] physical, mental, or emotional health or safety."

The court rejected this instruction, saying it felt bound by the court of appeals decision in *Dunham*.[1]

Based on its reading of the *Dunham* case, the court instructed the jury that the State had to prove the following elements:

1. The defendant ... is the parent of [A.J.]

2. [A.J.'s] age is less than fourteen years.

3. The defendant, in the State of Iowa, on or about 26 March 2003, acted knowingly.

---

1. In *Dunham* the Iowa Court of Appeals noted that, in the statute's text, the word "knowingly" comes before the word "acts." *Dunham*, 2003 WL 183774, at *3. From this, the court concluded that "knowingly" only modifies "acts." Thus, the court found that "the statute does not require the State to show that the defendant had a conscious awareness that her acts were creating a substantial risk of harm to the children." *Id.* The district court interpreted this language as implying that, if a substantial risk was in fact created, a defendant may be convicted for child endangerment regardless of her knowledge.

4. The manner in which she acted created a substantial risk to [A.J.'s] physical health or safety.

The trial court also provided this definition of knowledge:

For the defendant to know or have knowledge of something means she had a conscious awareness of her own actions.

The instructions as given did not require the jury to find the defendant had a conscious awareness that her actions created a substantial risk to the child's physical, mental, or emotional health or safety.

The jurors were confused as to the meaning of "knowingly" and sent a note to the judge asking the judge to "define knowingly." The court simply referred the jurors to the instructions as submitted to them.

## II. *Analysis.*

The jurors were not alone in being confused about the application of the "knowingly" element of the crime. When "knowingly" appears at the beginning of a sentence, the question is whether it applies only to the first word—here "acts"—or to later words in the same sentence. One authority illustrated this inherent ambiguity by discussing a federal case interpreting a criminal statute that prohibited "knowingly" selling a security without a permit.

What, for instance, does "knowingly" modify in a sentence from a "blue sky" law criminal statute punishing one who "knowingly sells a security without a permit" from the securities commissioner? To be guilty must the seller of a security without a permit know only that what he is doing constitutes a sale, or must he also know that the thing he sells is a security, or must he also know that he has no permit to sell the security he sells? As a matter of grammar the statute is ambiguous; it is not at all clear how far down the sentence the word "knowingly" is intended to travel—whether it modifies "sells," or "sells a security," or "sells a security without a permit."

Wayne R. LaFave, *Substantive Criminal Law* § 5.1(b), at 335 (2d ed. 2003). This authority concludes that "knowingly" in this sort of context refers to more than simply the defendant's acts. *Id.*

*United States v. Gifford,* 17 F.3d 462 (1st Cir.1994), considered a federal statute that prohibited

"knowingly" to receive "any visual depiction that has been mailed ... if (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (B) such visual depiction is of such conduct."

*Gifford,* 17 F.3d at 464 n. 1 (quoting 18 U.S.C. § 2252(a)(2) (1988)). The issue in *Gifford* was the scope of the modifier "knowingly": does it refer only to the defendant's receipt of the pornographic material, or does it refer to the other aspects of the crime? The court ruled that the statute required more than knowingly receiving the material, saying

section 2252(a) incorporates a paragraph-wide scienter requirement. We read the term "knowingly," as used in the statute, to modify not only "receives" but also the entire paragraph, including age and conduct.

*Gifford,* 17 F.3d at 472; *cf. United States v. Gendron,* 18 F.3d 955, 958 (1st Cir.1994) ("Knowingly" refers to more than simply receiving the pornographic material.).

The Iowa Court of Appeals in the unpublished *Dunham* case, and the district court in the present case, gave great weight to the syntax of the endangerment statute: the word "acts" follows immedi-

ately after the word "knowingly." However, er,

> one cannot know automatically, *simply from the position of the words in the sentence,* just which of the words following "knowingly" the word "knowingly" is meant to modify.... [T]hat linguistic fact simply reflects the more basic fact that statements, and parts of statements, quite often derive their meaning from context.

*Gendron,* 18 F.3d at 958.

The *Gendron* case provided this interesting illustration:

> The sentence "John knows that people speak Spanish in Tegucigalpa, which is the capital of Honduras," taken by itself, leaves us uncertain whether or not John knows that Tegucigalpa is the capital of Honduras; but, the context of the story in which the sentence appears, a context that includes other sentences, may clear up our uncertainty and leave us with no doubt at all.

*Id.*

*State v. Lambert,* 280 Mont. 231, 929 P.2d 846 (1996), examined the context of a criminal-endangerment statute to discern the scope of the word "knowingly." In that case, the trial court had instructed the jury that "knowingly" referred only to the defendant's conduct—i.e., driving a car. *Lambert,* 929 P.2d at 848. The supreme court reversed, saying:

> Our reading of the criminal endangerment statute is that it emphasizes result over conduct. The portion of the statute that we are reviewing here does not particularize the conduct that, if engaged in, results in the commission of the offense. Rather, a person may engage in a wide variety of conduct and

still commit the offense of criminal endangerment, provided that the conduct creates a substantial risk of death or serious bodily harm. It is the avoidance of this singular result, the risk of death or serious harm, that the law attempts to maintain.

> There being no particularized conduct which gives rise to criminal endangerment, applying to that offense's mental element the definition of "knowingly" that an accused need only be aware of his conduct is incorrect. It is the appreciation of the probable risks to others posed by one's conduct that creates culpability for criminal endangerment; were it otherwise, where culpability could lie for mere appreciation of one's conduct, such as driving a car or shooting a hunting rifle, some very unfair results could follow.

*Id.*

This view is consistent with that of the Model Penal Code, which explains the concept of knowledge in criminal cases:

> A person acts knowingly with respect to a material element of an offense when:
>
> (i) if the element involves the nature of his conduct ..., he is aware that his conduct is of that nature ..., and
>
> (ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

Model Penal Code § 2.02(2)(b) (2001).

This interpretation is also consistent with interpretations of similar statutes. Delaware, Missouri, and New York appear to be the only states with child-endangerment statutes that employ the "knowingly acts" language.[2] The courts of these

---

**2.** *See* Del.Code Ann. tit. 11, § 1102 (2003) ("A person is guilty of endangering the welfare of a child when ... [he] *[k]nowingly acts* in a manner likely to be injurious to [a child's welfare]." (Emphasis added.)); Mo.Rev.Stat. § 568.045.1(1) (2003) ("[A] person commits

states have interpreted the statutes as requiring the prosecution to prove that the defendant at least knew the facts and circumstances that created the risk. *See State v. Lynch*, No. 9911009756, 2000 WL 33115707, at *3 (Del.Super.Ct. Oct. 13, 2000) (unpublished opinion) (stating that the State must show that defendant "knowingly endangered" the child's welfare); *State v. Mullins*, 140 S.W.3d 64, 72 (Mo.Ct.App.2004) (holding that, under Missouri's statute, the prosecution must prove that the defendant knew her acts put the child in a position of substantial risk);[3] *People v. Pelt*, 157 Misc.2d 90, 596 N.Y.S.2d 301 (N.Y.City Crim.Ct.1993).[4]

In *Pelt* the defendant was charged with child endangerment for shooting a firearm at a moving vehicle in which a three-year-old child was riding. *Pelt*, 596 N.Y.S.2d at 302. The court dismissed the charge because the bill of particulars contained "no facts which demonstrate that the defendant knew the child was in the car, *e.g.*, that the child was visible." *Id.* at 303. The court explained:

> While a court may infer from the circumstances that a defendant acted "knowingly", the accusatory instrument, in this case, is devoid of any facts from which the court could infer that the defendant acted "knowing" that her conduct would likely be injurious to a child.... Thus, the court cannot infer, by legally sufficient circumstantial evidence, that the defendant acted "knowing" that her conduct was likely to be injurious to a child.

*Id.*

We conclude it was error for the trial court to instruct that "knowingly" refers only to the defendant's act. The instructions should have informed the jury that it must find the defendant acted with knowledge that she was creating a substantial risk to the child's safety.

We reverse and remand for a new trial.

**REVERSED AND REMANDED.**

---

3. There are several other Missouri cases that also support this interpretation of the Missouri statute. *See, e.g., State v. Manwarren*, 139 S.W.3d 267, 272 (Mo.Ct.App.2004) (stating that, because defendant had, on previous occasions, tossed the child into the air so hard the child's head put a hole in the ceiling, the jury could have concluded that the defendant *"knowingly* created the substantial risk to the health of [the child]" when he tossed the child again); *State v. Fuelling*, 145 S.W.3d 464, 468

the crime of endangering the welfare of a child in the first degree if ... [t]he person *knowingly acts* in a manner that creates a substantial risk to the life, body, or health of a child...." (Emphasis added.)); N.Y. Penal Law § 260.10(1) (McKinney 2003) (stating that a person is guilty of child endangerment if he *"knowingly acts* in a manner likely to be injurious to the physical, mental or moral welfare of a child" (emphasis added)).

(Mo.Ct.App.2004) ("the State had to prove that Ms. Fuelling knew that her conduct was 'practically certain to *endanger* the child' ").

4. There are several other New York cases that also support this interpretation of the New York statute. *See, e.g., People v. Hitchcock*, 98 N.Y.2d 586, 750 N.Y.S.2d 580, 780 N.E.2d 181, 183 (2002) ("Criminal liability for endangering the welfare of a child is imposed when a defendant engages in conduct knowing it will present a 'likelihood' of harm to a child (i.e., with an awareness of the potential for harm). In short, a defendant must simply be *aware* that the conduct may likely result in harm to the child." (Citations and internal quotations omitted.)); *People v. M.T.*, 2 Misc.3d 980, 773 N.Y.S.2d 247, 250 (N.Y.City Crim.Ct.2004); *People v. Gibble*, 2 Misc.3d 510, 773 N.Y.S.2d 499, 501 (N.Y.City Crim.Ct. 2003).