# IN THE COURT OF APPEALS OF IOWA

No. 22-1581
Filed August 30, 2023

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**PAULA LYNN COLE,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, William P. Wegman, District Associate Judge.

Paula Cole appeals from her conviction for child endangerment. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Ella M. Newell, Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Ahlers, P.J., Badding, J., and Vogel, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**VOGEL, Senior Judge.**

Paula Cole appeals from her conviction for child endangerment, arguing the evidence was insufficient to show that her actions created a substantial risk to her children's physical, mental, or emotional health or that she knowingly acted despite the risk. We find sufficient evidence to support her conviction and affirm.

## I. Background Facts & Proceedings

The events at issue occurred on July 2, 2021. At the time, Paula Cole lived in a Waterloo apartment with her six children: D.C. (age twelve), Q.C. (age ten), C.C. (age nine), O.C. (age seven), I.C. (age five), and S.C. (infant).[1]

Twelve-year-old D.C. testified Cole woke him that morning to say she was taking S.C. to the store and leaving D.C. in charge of the five older children. Five-year-old I.C. was the youngest child left at home that morning. Nine-year-old C.C. testified she was awake when Cole left but later got into a fight with O.C. She testified she was mad and went outside the apartment building. A neighbor observed C.C. in the parking lot "being angry, stomping around, [and] pacing back and forth." Ten-year-old Q.C., after trying to get C.C. back in the building, used the neighbor's phone to call 911 and report C.C. left the apartment building.[2] The neighbor testified Q.C. "was kind of freaking out," so the neighbor let Q.C. use the phone "to help him calm down." C.C. testified that after the police arrived, she went in the apartment, located her phone, and used an app to contact Cole.

Police Officer Shawn Bram responded to Q.C.'s call. When he arrived, he saw "several" children in front of the apartment building. Cole's children took

---

[1] We will refer to the children's ages on July 2, 2021.
[2] Q.C. did not testify, but a recording of his 911 call was admitted into evidence.

Officer Bram into their apartment, where he saw the five children with no adults inside. Officer Bram testified D.C. was asleep when he entered the apartment and never got up while he was there. Although Officer Bram saw one or more cell phones in the apartment, none of the phones had service, and the children could not tell him how to contact Cole. Police dispatch was able to find Cole's cell phone number and told her to return home. Officer Bram estimated he was at the scene for twenty to twenty-five minutes before Cole arrived. When she entered the apartment, Cole told officers the children's father was supposed to watch the children while she went to the store, but she quickly acknowledged he was never in the apartment that morning. While officers were in the apartment, Cole had the following phone conversation with an unknown person:

> COLE: I ran to [the store] real fast and my kid—I left my oldest five kids here because they were asleep and my twelve-year-old and—was here with them. And, um, they ended up calling the police, so the police are here. . . .
> UNKONWN PERSON: [Inaudible]
> COLE: I know, but I didn't have nobody—I didn't have no—no other way to the store.[3]

Cole was arrested and charged with one count of child endangerment in violation of Iowa Code section 726.6 (2021). While awaiting trial, Cole spoke to a child protection worker with the Iowa Department of Health and Human Services (HHS). The HHS worker testified Cole acknowledged during the interview that Q.C. has autism and that C.C. could have a difficult "emotional response to situations" and had "relational issues" with her siblings.

---

[3] Cole's statements in the apartment were recorded on officers' bodycams, and the videos were admitted as evidence. We transcribed Cole's statements after listening to the exhibits.

The case proceeded to trial in July 2022, after which a jury convicted Cole as charged. The court sentenced Cole to 187 days in jail with all but seven days suspended and credit for time served, placed her on informal probation for two years, and suspended a fine. She appeals.

## II. Standard of Review

We review sufficiency-of-evidence claims for correction of errors at law. *State v. Lacey*, 968 N.W.2d 792, 800 (Iowa 2021).

> Under this standard, the court is highly deferential to the jury's verdict. We will affirm the jury's verdict when the verdict is supported by substantial evidence. Evidence is substantial when the quantum and quality of evidence is sufficient to "convince a rational fact finder that the defendant is guilty beyond a reasonable doubt." In conducting substantial-evidence review, this court considers the evidence in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence. "Evidence is not insubstantial merely because we may draw different conclusions from it; the ultimate question is whether it supports the finding actually made, not whether the evidence would support a different finding."

*Id.* at 800–01 (internal citations omitted).

## III. Discussion

To convict Cole of child endangerment, the marshalling instruction, following Iowa Code section 726.6(1)(a), required the jury to find:

> 1. On or about the 2nd day of July, 2021, [Cole] was the parent of the children
> 2. Each child was under the age of 14 years.
> 3. [Cole] knowingly acted in a manner that created a substantial risk to the children's physical, mental or emotional health.

Cole only contests the third element. She argues the evidence is insufficient to prove her actions created a substantial risk to her children's physical, mental, or emotional health or that she had the requisite knowledge.

As to a "substantial risk," such a risk "in the context of child endangerment is '[t]he very real possibility of danger to a child's physical health or safety.'" *State v. Folkers*, 941 N.W.2d 337, 339 (Iowa 2020) (alteration in original) (quoting *State v. Anspach*, 627 N.W.2d 227, 233 (Iowa 2001)). "The risk does not have to be likely, probable, or statistically significant. It just needs to be real or identifiable as opposed to speculative or conjectural." *Id.*

Cole was the only adult who knew the children were alone in her apartment that morning. Although Cole claimed to have awakened twelve-year-old D.C. and placed him in charge before she left, Officer Bram observed him to be asleep or at least groggy while he was there and thus was in no position to supervise his siblings. Ten-year-old Q.C. was the next oldest, and he lacked the maturity to navigate a dispute among his siblings without going to a neighbor and dialing 911 for help. None of the children could tell Officer Bram how to contact Cole that morning for help. While the children could and did contact a neighbor, the neighbor testified Cole did not ask him to keep an eye on the children or even verify he was home before she left. Cole herself was about twenty to twenty-five minutes away from returning to her children once dispatch contacted her, and this delay remains significant even if we accept C.C.'s testimony that she also contacted Cole that morning using her own phone. The record does not contain evidence of how long Cole left the children unsupervised before the 911 call was placed. The children were home alone for an undetermined length of time, during which any of them could have suffered serious injury or strayed from the apartment—as C.C. did— with no safety plan for immediate assistance. Cole asks us to consider conflicting evidence and draw opposite inferences, but such tasks are for the jury. *See State*

*v. Brimmer*, 983 N.W.2d 247, 256 (Iowa 2022) ("It is not our place 'to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the jury.'" (quoting *State v. Musser*, 721 N.W.2d 758, 761 (Iowa 2006)). Thus, the evidence is sufficient to find Cole created a substantial risk of harm to her children.

As to Cole's mental state, "knowingly" means she "acted with knowledge that she was creating substantial risk to the child[ren's] safety." *State v. James*, 693 N.W.2d 353, 357 (Iowa 2005). "[K]nowledge may be proved not only by direct evidence, but also by reasonable inferences drawn from the circumstances." *State v. Millsap*, 704 N.W.2d 426, 430 (Iowa 2005).

Upon returning to the apartment, Cole told police she left the children's father in charge of watching the children. Creating this false story in an attempt to cover up her actions demonstrated Cole knew she should not have left the children unsupervised. *See State v. Bloom*, 983 N.W.2d 44, 50 (Iowa 2022) (explaining a fabrication may "indicate[ ] a consciousness of guilty" (quoting *State v. Cox*, 500 N.W.2d 23, 25 (Iowa 1993)). Her statement in the apartment that she had "no other way to the store" also shows she knew of and chose to take the risk of leaving the children unsupervised in the apartment. Finally, her statements to the HHS worker—that C.C. was prone to emotional and relational issues—indicates she knew C.C. could have an outburst while she was gone, which is exactly what happened. Again, the evidence could support an opposite conclusion, but the jury was entitled to reach the decision it did. *See Brimmer*, 983 N.W.2d at 256. Thus, the evidence is sufficient to find Cole acted knowingly.

**IV.     Conclusion**

The evidence is sufficient to find Cole acted knowingly in a manner that created a substantial risk to her children's health.  Therefore, we affirm the district court.

**AFFIRMED.**